UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| L & W SUPPLY CORPORATION<br>d/b/a ACOUSTICAL & DRYWALL SUPPLY<br><br>PLAINTIFF<br><br>v.<br><br>ACUITY, A MUTUAL INSURANCE CO.<br><br>DEFENDANT | CIVIL ACTION NO. 3:03-CV-585-H |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL DISCOVERY AND FOR AN EXTENSION OF THE DISCOVERY DEADLINE

Defendant, Acuity, A Mutual Insurance Company ("Acuity"), by counsel, hereby submits this memorandum of law in support of its motion to compel discovery and its motion to extend discovery.

I. **INTRODUCTION**

This cause of action was brought by plaintiff, L&W Supply Corporation, d/b/a Acoustical and Drywall Supply ("L&W") against Acuity and International Fidelity Insurance Company ("International Fidelity"), sureties on separate payment bonds on a construction project. L&W seeks to recover under the bonds for material provided to the construction project. L&W's suit against Acuity also alleges bad faith in violation of Kentucky's Unfair Claims Settlement Practices Act, KRS 304.12-230 ("UCSPA"). In defense of that claim, Acuity has sought to take the depositions of plaintiff's attorneys regarding those attorneys' communications and negotiations with Acuity which gave rise to the UCSPA claim. Plaintiff's attorneys have refused to give their depositions and, therefore, Acuity has filed this motion to compel those depositions.

L&W has also refused to respond to Acuity's request for documents relating to certain work that L&W performed on the construction project. This discovery is relevant to not only the underlying bond claim but also to L&W's UCSPA claim.

Finally, because L&W has failed to comply with these discovery requests, it is necessary for Acuity to move the Court to extend discovery for 60 days in order to allow this discovery to occur.

## II. **FACTS**

This case arises from the construction of the Journalism and Technology building at Western Kentucky University ("Project"). The Commonwealth of Kentucky was the owner of the Project and contracted with Star Construction Company ("Star") to construct the Project. Star subcontracted with Drywall Acoustics, Inc. ("Drywall Acoustics") to perform work on the Project. Drywall Acoustics contracted with L&W to supply materials to the Project.

There were two payment bonds on the Project. Star obtained a payment bond from Acuity and Drywall Acoustics obtained a payment bond from defendant, International Fidelity.

During the Project, L&W alleged that it had not received payment for all of the materials supplied to the Project. Between June 9, 2003 and August 21, 2003, the date this suit was filed, L&W's attorneys communicated and negotiated with Acuity and International Fidelity regarding L&W's claim. Specifically the following communications took place:[1]

**June 9, 2003** - L&W's attorney, Larry Zielke, III ("Mr. Zielke") sent a letter to Acuity making a claim on behalf of L&W on the payment bond.

---

[1] These facts are supported by the attached correspondence and attorney time entries produced by L&W in this case. These documents are collectively attached hereto as Exhibit A and the deposition of Greg Olsen.

**June 11, 2003** - Greg Olsen ("Mr. Olsen") of Acuity sent a letter to Mr. Zielke acknowledging receipt of his client's claim and requested that he provide Acuity with documentation and substantiation of the claim.[2]

**June 25, 2003** - Mr. Zielke wrote Greg Olsen of Acuity providing some of the documentation regarding L&W's claim.

**August 12, 2003** - John Dwyer telephoned Greg Olsen informing him that Drywall Acoustics had not paid L&W. Mr. Olsen advised Mr. Dwyer that Acuity had disbursed funds that should have been used to satisfy L&W's claim.

**August 13, 2003 through August 21, 2003** - Acuity investigated whether L&W had been paid from the funds issued to Drywall Acoustics and, if it did not receive those funds, what the legal effect was of Drywall Acoustics' certification that all subcontractors had been paid. Acuity retained Attorney Larry Moelmann to advise it regarding these matters.

**August 13, 2003** - Mr. Dwyer wrote Acuity insisting that Acuity immediately pay L&W's claim.

**August 18, 2003** - Mr. Dwyer wrote Acuity advising it that at the meeting of creditors of Drywall Acoustics bankruptcy, Drywall Acoustics admitted that it had made no payments to L&W.

**August 19, 2003** – Mr. Moelmann wrote Mr. Dwyer advising him that Acuity was currently investigating the claim and requested a copy of the bankruptcy transcript. Mr. Moelmann advised Mr. Dwyer that they were trying to determine whether under Kentucky law, the partial release delivered by Drywall Acoustics would constitute a defense under a payment bond by a supplier. Mr. Moelmann further advised Mr. Dwyer that Acuity was continuing with its investigation of L&W's claim.

**August 20, 2003** - Mr. Moelmann notified Mr. Dwyer that he had learned that Drywall Acoustics was bonded by International Fidelity and requested Mr. Dwyer contact International Fidelity to resolve his claim.

**August 20, 2003** - Mr. Dwyer wrote International Fidelity making a claim on its bond.

**August 21, 2003** - Mr. Dwyer wrote Mr. Moelmann advising him that the time for Acuity to investigate L&W's claim had expired.

---

[2] On June 3, 2003 just prior to receiving this claim, Acuity had issued a check payable to Drywall Acoustics (the entity with whom L&W contracted) in the amount of $138,212.00. On June 12, 2003, the day after receiving L&W's claim, it issued another check to Drywall Acoustics in the amount of $61,804.80. On July 1, 2003 Acuity received a partial release and certificate of payment in which Drywall Acoustics "certifies and represents that it has made full payment of all costs, charges and expenses incurred by it on its behalf for work, labor, services, materials and equipment supplied to the foregoing premises." Based on the Certificate of Payment, Acuity believed L&W had been paid. It was not until Mr. Dwyer called Acuity on August 12, 2003, that it realized L&W had not been paid. Between August 12, 2003 and August 21, 2003, Mr. Moelmann had a series of telephone calls with Mr. Dwyer and International Fidelity regarding L&W's claim and investigating the possibility of fraud by Drywall Acoustics. L&W filed this suit on August 21, 2003.

**August 21, 2003** - L&W filed suit against Acuity on the payment bond alleging UCSPA violations.

As detailed in the above chronology, L&W's attorneys, Mr. Dwyer and Mr. Zielke were the only ones communicating with Acuity and International Fidelity regarding L&W's claim on their respective bonds.[3]

Because L&W's attorneys were the only individuals who ever communicated with Acuity about L&W's claim, Acuity requested to take Mr. Dwyer's deposition (see letter dated August 4, 2004 from counsel for Acuity to Mr. Dwyer requesting his deposition). (Attached hereto as Exhibit B). Acuity later requested to also take Mr. Zielke's deposition. Because L&W's claim seeks attorney fees, these depositions are also necessary to allow Acuity to determine the legal services provided to L&W. In a letter dated August 16, 2004, Mr. Dwyer refused to give his deposition stating: "You will not be taking my deposition without a court order, which I suspect you already know you will not get." (Attached as Exhibit C). On August 16, 2004, counsel for Acuity responded to this letter again requesting to take Mr. Dwyer's deposition and explaining in more detail what facts it believed Mr. Dwyer possessed which would justify taking his deposition. (Attached as Exhibit D). On August 26, 2004, counsel for Acuity made one last attempt to secure Mr. Dwyer's agreement to give his deposition and the deposition of Mr. Zielke of his office. (Attached as Exhibit E) In this letter, counsel for Acuity cited Mr. Dwyer to the Kentucky Supreme Court case of *Riggs v. Schoering,* in which the Kentucky Supreme Court held that a defendant insurance company defending claims alleging UCSPA violations is entitled to take the plaintiff's attorney's deposition regarding that attorney's negotiations of the underlying claim. L&W's counsel did not respond to this letter.

---

[3] The chronology also establishes that L&W filed this suit alleging UCSPA violations just nine weeks after Acuity first received L&W's claim, six weeks after receiving some of the supporting documentation and only nine days after Acuity first learned that the payments to Drywall Acoustics had not reached L&W.

In addition to refusing to give his deposition, Mr. Dwyer also refused to provide documents previously requested and relevant to L&W's claim against Acuity. Specifically, in its August 4, 2004 letter to Mr. Dwyer (Exhibit B) Acuity requested that L&W supplement its prior response to Document Request No. 6 and provide information regarding a custom order item of work on the Project. (L&W's Response to Request for Production of Documents and Interrogatory Answers are attached as Exhibit F). In this letter, Acuity attached a June 22, 2004 letter from Mr. Moelmann to Mr. Dwyer requesting these documents. L&W responded by stating that it had already produced some documents related to the custom order work but refused to produce any other documents related to this work.

### III. **ARGUMENT**

The Court should enter an order compelling Mr. Dwyer and Mr. Zielke to give their depositions in this cause of action and to produce all of their files related to communications with either Acuity or International Fidelity related to L&W's claim on the Project and regarding the legal services provided to L&W giving rise to L&W's claim for attorney fees.

Rule 26(b)(1) of the Federal Rules of Civil Procedure permits discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Federal Courts have liberally interpreted the rules of discovery to allow discovery on any matter that could reasonably bear on an issue in the case. *Harris v. Nelson*, 294 U.S. 286, 297 (1969) (The discovery rules have been generously construed to provide a great deal of latitude for discovery).

The law in Kentucky is clear that an insurance company defending a bad faith failure to settle claim has the right to take the plaintiff's attorney's deposition regarding that attorney's communications and negotiations with the insurance company which gave rise to the bad faith claim. This precise issue was addressed by the Kentucky Supreme Court in the case of *Riggs v.*

In addition to refusing to give his deposition, Mr. Dwyer also refused to provide documents previously requested and relevant to L&W's claim against Acuity. Specifically, in its August 4, 2004 letter to Mr. Dwyer (Exhibit B) Acuity requested that L&W supplement its prior response to Document Request No. 6 and provide information regarding a custom order item of work on the Project. (L&W's Response to Request for Production of Documents and Interrogatory Answers are attached as Exhibit F). In this letter, Acuity attached a June 22, 2004 letter from Mr. Moelmann to Mr. Dwyer requesting these documents. L&W responded by stating that it had already produced some documents related to the custom order work but refused to produce any other documents related to this work.

### III. **ARGUMENT**

The Court should enter an order compelling Mr. Dwyer and Mr. Zielke to give their depositions in this cause of action and to produce all of their files related to communications with either Acuity or International Fidelity related to L&W's claim on the Project and regarding the legal services provided to L&W giving rise to L&W's claim for attorney fees.

Rule 26(b)(1) of the Federal Rules of Civil Procedure permits discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Federal Courts have liberally interpreted the rules of discovery to allow discovery on any matter that could reasonably bear on an issue in the case. *Harris v. Nelson*, 294 U.S. 286, 297 (1969) (The discovery rules have been generously construed to provide a great deal of latitude for discovery).

The law in Kentucky is clear that an insurance company defending a bad faith failure to settle claim has the right to take the plaintiff's attorney's deposition regarding that attorney's communications and negotiations with the insurance company which gave rise to the bad faith claim. This precise issue was addressed by the Kentucky Supreme Court in the case of *Riggs v.*

*Schoering*, Ky., 822 S.W.2d 414 (1991). *Riggs* was a bad faith action against Aetna in which Aetna requested the deposition of plaintiff's counsel and subpoenaed his records regarding the counsel's communications with Aetna regarding the underlying claim. The Kentucky Supreme Court held that in a bad faith refusal to settle claim against an insured, matters pertaining to the negotiation of the underlying claim were subject to discovery. The court held that where the subject matter of the litigation involved the communication between the plaintiff and the insurance company that such communications are discoverable. Where the communication is made by plaintiff's attorney, it is permissible to take that attorney's deposition. The court further noted, that it would be unfair to require the insurance company's adjuster to submit to a deposition but not require the plaintiff's attorney to submit a deposition. Other jurisdictions support this position. *See Firemen's Fund Ins. Co. v. The Superior Ct. of Los Angeles*, 72 Cal. App. 3d 786 (1977) in which the court stated:

> [I]n those cases in which an attorney for a party is the sole, or principal, negotiator and in which bad faith was alleged and punitive damages sought based upon allegations of bad faith, then we think the facts fall outside attorney-client privilege and outside the work product rule, and the deposition of the attorney may be had.

*Id.* at 790.

These authorities make it clear that Acuity is entitled to take the depositions of Mr. Zielke and Mr. Dwyer and to obtain copies of their file related to those communications and negotiations with Acuity and International Fidelity. Consequently, the Court should enter an order compelling these depositions and production of documents.

L&W has refused to produce documents which reflect certain work it did on the Project. Specifically, it has refused to produce documents showing custom order work. These documents are clearly relevant because they relate to L&W's work on the Project. Acuity is entitled to

review documents related to L&W's work in order to determine the validity of the work and whether this work should be paid under the payment bond. It is inconceivable that a subcontractor making a claim on a payment bond would refuse to produce documents of any nature related to its work on the Project. All of those documents are clearly relevant to the validity of its bond claim as well as the validity of its bad faith claim. Consequently, the Court should enter an order compelling production of these documents.

Finally, the Court should grant Acuity its attorney's fees incurred in filing this motion to compel discovery. L&W's attorneys' refusal to give their depositions is contrary to the Kentucky Supreme Court ruling in the *Riggs* case. In light of that clear precedent, L&W's attorneys have no grounds to refuse to give a deposition and Acuity should not have been put to the expense of filing a motion to compel discovery. Likewise, Acuity should not have had to file a motion to compel discovery to obtain documents which relate to L&W's work on the Project when the essence of L&W's claim relates to its work on the Project. Therefore, pursuant to Rule 37(a)(4), L&W should be required to pay Acuity's attorneys' fees in obtaining this order compelling discovery.

Finally, because of L&W's refusal to respond to Acuity's discovery request, it is necessary for Acuity to request an extension of discovery from the current discovery deadline of September 1, 2004 to November 1, 2004.

                                                  Respectfully submitted,

                                                  Joseph L. Hardesty
                                                  Matthew A. Gillies
                                                  STITES & HARBISON PLLC
                                                  400 West Market Street, Suite 1800
                                                  Louisville, Kentucky 40202-3352
                                                  (502) 587-3400

and

Lawrence R. Moelmann
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, Illinois 60601
(312)704-3000

Counsel for Acuity, A Mutual Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by first class mail, postage prepaid, on this 30 day of Aug., 2004, upon:

| | |
|---|---|
| John H. Dwyer, Jr., Esq. | Timothy D. Martin |
| Laurence J. Zielke, Esq. | ALBER CRAFTON, PLLC |
| PEDLEY ZIELKE & | Hurstbourne Place, Suite 1300 |
| GORDINIER, PLLC | 9300 Shelbyville Road |
| Meidinger Tower, 29th floor | Louisville, Kentucky 40222 |
| 462 S. Fourth Street | |
| Louisville, KY 40202 | |

Joseph L. Hardesty

## CERTIFICATION OF COUNSEL

The undersigned counsel for defendant, Acuity, A Mutual Insurance Company, hereby certifies pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 37.1 that movant has in good faith conferred or attempted to confer with plaintiff's counsel in order to resolve the discovery dispute which gives rise to this motion to compel discovery.

The undersigned counsel certifies that plaintiff and Acuity have been unable to resolve the discovery dispute as evidenced by the attached correspondence to the motion to compel discovery. (See Exhibits B – E attached to Acuity's Memorandum in Support of Motion to Compel Discovery.)

_____
Joseph L. Hardesty
STITES & HARBISON PLLC
400 W. Market Street, Suite 1800
Louisville, KY 40202-3352
(502) 587-3400
Counsel for Acuity, A Mutual Insurance Company