UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

L & W SUPPLY CORPORATION,
d/b/a ACOUSTICAL & DRYWALL SUPPLY                                                        PLAINTIFF

v.                                                                        CIVIL ACTION NO. 3:03CV-512-S

ACUITY, A MUTUAL INSURANCE CO.                                                          DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on motion of the defendant, Acuity, A Mutual Insurance Co., for summary judgment on claims alleging that it engaged in unfair claims settlement practices. DN 42. For reasons stated below, the court concludes that no genuine issue of material fact exists and Acuity is entitled to judgment as a matter of law.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a

light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

The facts pertinent to summary judgment are undisputed.

This case arose from the construction of the Journalism and Technology Building at Western Kentucky University. The Commonwealth of Kentucky contracted with Star Construction Company to manage the project. Star subcontracted with Drywall Acoustics, Inc. ("DA") to provide interior and exterior finishing work on the project. DA contracted with the plaintiff, L & W, to provide drywall supplies for its work.

Star defaulted on its obligations as general contractor. Pursuant to its performance bond, Acuity stepped in to ensure completion of the project. To that end, Acuity retained Merit Construction Company to serve as construction manager. In addition to the performance bond, Acuity had also provided a payment bond for Star on the project.

On June 3 and June 12, 2003, Acuity issued checks payable to DA in the amounts of $138,212.00 and $61,804.80, respectively. The checks were sent to Merit who was responsible for the disbursement of payments to subcontractors on the project. DA signed two Partial Release and Certification forms and returned them, as required, to Merit. These forms certified that, as to each of the partial payments it had received, DA had paid its subcontractors for all labor, services, materials and equipment provided on the project. The originals of these executed forms were received by Merit on June 30, 2003. Merit faxed the certifications to Acuity on July 1, 2003.

L & W alleged that it was not paid by DA for materials supplied on the project. L & W gave notice by letter dated June 9, 2003 of a claim on the Acuity payment bond in the amount of $128,554.72. On June 11, 2003, Acuity acknowledged by letter its receipt of L & W's notice and requested that L & W provide documentation substantiating the claim. Documentation was forwarded to Acuity on June 25, 2003. On July 1, 2003, Acuity requested verification from DA by July 11, 2003 of their payment to L & W. DA did not respond to Acuity's letter. Acuity did not

pursue further verification from DA because Acuity had received its certifications from Merit on July 1, 2003. Acuity had no reason to believe that DA's certifications were untrue.

> Gregory T. Olsen, the director of surety claims for Acuity, testified as follows:
>
> Q: Okay. You asked Chris in your letter to respond by July 11th in the last paragraph, so I assume you would have given him at least that long before you did anything else?
>
> A: Correct.
>
> Q: Okay. What do you recall doing on July 12th or thereafter with regard to Drywall Acoustics' failure to explain this?
>
> A: I don't recall doing anything else after this.
>
> Q: Do you know why?
>
> A: I had received certifications from Drywall Acoustics signed by Chris Hawksley indicating that he had made payment to his subcontractors and suppliers.
>
> ...I knew that I had cut the checks, and you know in normal course of business dealings with Merit they knew to exchange them for the appropriate certifications or waivers.
>
> Q: And in fact they had apparently. And when you got the waiver, you read the language contained in it that states that the money was applied appropriately. Is that why you didn't, did you assume that Hawksley had done what he had said he had done?
>
> A: Yes. I had no reason to assume otherwise.
>
> Q: Exhibit 16 [the letter giving notice of bond claim] wasn't any reason to think that maybe there was a question about whether he had actually made these payments, that is the bond claim?
>
> A: Exhibit 16 would appear to be dated before the checks were even exchanged for the waivers from Mr. Hawksley.
>
> ...Q: You assumed that because you had paid Drywall Acoustics they had turned around and paid?
>
> A: They certified to me they did.

Olsen depo., pg. 70-72.

Acuity did not obtain further verification from DA between July 12, 2003 and August 12, 2003 of payment to L & W.  John Dwyer, counsel for L & W, contacted Olsen on August 12, 2003 and informed him that L & W had still not been paid by DA.  Acuity had been made aware that DA had filed for bankruptcy protection, but it relied on the certifications by DA that it had paid L & W until August 12, 2003 when counsel for L & W gave it reason to question their truth.  Once it was made aware that DA's certifications were possibly false, it immediately investigated the matter.

L & W demanded immediate payment by letter dated August 13, 2003.  On August 18, 2003 L & W further advised Acuity that Hawksley had admitted under oath in the bankruptcy meeting of creditors that DA never paid L & W.  This letter again demanded immediate payment under the Acuity bond.  Acuity responded that it was investigating the claim and that it could not pay the demand immediately.  L & W filed this bad faith claim against Acuity three days later on August 21, 2003.[1]

L & W raises a number of bases for its contention that Acuity acted in bad faith in settling its claim.  The only contention that Acuity acknowledges as properly raised is the claim for the delay between June 9 and August 21, 2003 in paying the claim.[2,3]  L & W also contends that Acuity committed four violations of the UCSPA: (1) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies, KRS 304.12-230(2); (2) Refusing to pay claims without conducting a reasonable investigation based upon all available

---

[1]L & W also sued Acuity for breach of the bond agreement, and filed a second suit against International Fidelity on the bond provided for DA. International Fidelity filed a third-party complaint against Chris and Debbie Hawksley.  These other claims are not in issue here.

[2]In fact, Acuity never paid the claim.  L & W also filed suit against International Fidelity Insurance Company, the underwriter of the payment bond for DA.  International Fidelity settled with L & W and Acuity was released from all potential contractual liability.

[3]Acuity contends that L & W is prohibited from raising various arguments in response to its summary judgment motion which were not supported by the testimony of L & W's Rule 30(b)(6) corporate designee.  We need not address the merits of this contention as we conclude that all of the arguments raised by L & W fail for the same reason; that is, that there is a complete absence of proof of conscious wrongdoing or recklessness on the part of Acuity.

information, KRS 304.12-230(4); (3) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed, KRS 304.12-230(5); and (4) Not attempting to effectuate in good faith prompt, fair and equitable settlements of claims in which liability has become reasonably clear, KRS 304.12-230(6).

The court concludes that the evidence is insufficient to establish a claim of bad faith on any of the theories put forth by L & W. Whether focus is placed on the amount of time it took for L & W to obtain payment or on one of the other alleged bases enumerated in KRS 304.12-230, there is no evidence to suggest reckless indifference on the part of Acuity in its handling of L & W's claim.

The evidence of record establishes that the timing of events led Acuity to assume that L & W had been paid by DA. There is nothing in the record to contradict Olsen's deposition testimony. L & W contends that happenings such as the bankruptcy filing by DA and the submission of documentation to support L & W's claim in late July should have indicated to Acuity a need to further investigate the truth of the certifications provided by DA. It also alleges that Acuity should have responded to L & W after receiving its supporting documents in late June. L & W urges that Acuity acted in reckless disregard of L & W's claim on Acuity's bond (bond in favor of Star) by failing to disclose that International Fidelity had provided another bond (bond in favor of DA) against which it could make a claim. None of these contentions can rise to the level of reckless behavior in the face of the unrefuted testimony that Acuity possessed certifications of payment to L & W and did not doubt the reliability of those documents.

In *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993), the Kentucky Supreme Court stated that "there is no such thing as a 'technical violation' of the UCSPA, at least in the sense of establishing a private cause of action for tortious misconduct justifying a claim of bad faith." The court went on to state that

> [A]n insured must prove three elements in order to prevail against an insurance company for alleged refusal in bad faith to pay the insured's claim: (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must

> lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such basis existed...

As in *Wittmer,* the problem here is that there might be evidence that some sort of technical violations of the UCSPA occurred, but there is no evidence that elevates the dispute from contractual dispute to the level of a tort of bad faith. The court noted in *Wittmer* that there must be sufficient proof of intentional or reckless misconduct to establish that a tort occurred.

The payment bond issued by Acuity contained the provision that "[u]pon receipt of claim from a Beneficiary hereunder, the Surety shall promptly, and in no event later that 30 days after receipt of such claim, respond to such claim in writing (furnishing a copy of such response to the owner) by: (A) making payment of all sums not in dispute; and (B) stating the basis for disputing any sums not paid." Payment Bond, pg. 3, ¶ 5. A failure to pay or respond within thirty days, standing alone, is insufficient to establish bad faith. Acuity's expert, David L. Styers, testified that based upon the sequence of events, it was reasonable for Olsen to believe that L & W had been paid. Further, believing that payment had been made by virtue or the certifications from DA, any failure to further investigate or to provide L & W with information could not be found by a reasonable jury to constitute a reckless course of action. We conclude that neither the existence of a bankruptcy proceeding nor the filing of documentation by L & W alter the calculus.

L & W relies upon the case of *King v. Liberty Mutual Insurance Co.*, 54 Fed.Appx. 833 (6th Cir. 2003)(unpubl.), to support its contention that failure to verify and to promptly settle a claim can constitute reckless conduct. The facts of that case are readily distinguishable, however. In *King* there was evidence that the adjuster may have had actual knowledge that the claim had been settled for a specific amount, but denied that proof existed of the claim. When it was sued, the insurance company made an offer of payment of approximately 15% of the original settlement amount. The insurance company did not search its files for any documentation of the original settlement until

after the insured filed suit against it almost three years after the claim for payment under the terms of the settlement had been made. No records search was made until that time despite the adjuster's arguable knowledge that a settlement had been reached. The court held that

> The second area that we believe raises a genuine issue of material fact as to Liberty Mutual's alleged bad faith concerns the knowledge possessed by Liberty Mutual's employee Hardee at the time that he was in contact with King and her attorney, M. Austin Mehr. King presented proof that Hardee verified the existence of a settlement in a phone conversation that he had with Liberty Mutual's original attorney, F. Preston Farmer, in October of 1998...In sum, we believe that there is sufficient "proof or evidence supporting a reasonable inference that the purpose of the delay [in payment] was to extort a more favorable settlement or to deceive the insured with respect to the applicable coverage" to justify sending this question to the jury. *Motorists Mutual v. Glass*, 996 S.W.2d 437, 453 (Ky. 1997).

*King*, 54 Fed.Appx. at 838. The court noted in conclusion that "[t]his is not to say that the ultimate outcome is foreordained, because a jury might well find that Liberty Mutual has not exhibited bad faith in regard to King's claim." *Id*.

This court has been shown no evidence that creates a genuine issue of material fact concerning whether Olsen knew that L & W had not been paid. In fact, the uncontroverted evidence establishes that Olsen was possessed of information that militated against any such belief until August 12, 2003. Further, there is no evidence comparable to the "low ball" offer of settlement in the *King* case, which would raise the specter of bad purpose or deception on the part of Acuity.

For the reasons stated herein, the court concludes that no genuine issue of material fact exists and Acuity is entitled to judgment as a matter of law. A separate order will be entered herein this date in accordance with this opinion.